**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

LAURI ALLEN,

           *Plaintiff*,

  vs.

THE GARDEN CITY CO-OP, INC. and
JOHN MCCLELLAND,

           *Defendants.*

Case No. 07-1131-EFM

**MEMORANDUM AND ORDER**

Before the Court is Defendants John McClelland and The Garden City Co-Op, Inc.'s Motion for Summary Judgment (Doc. 85). The motion has been fully briefed. For the following reasons, the Court denies in part and grants in part the motion.

**I.  Factual Background[1]**

At the Garden City Co-Op, Inc., the CFO and three division Vice-Presidents functioned as if they were on the same level and reported to the CEO. The three Vice Presidents were each in charge of a different division: crop production; petroleum; and grain. The CFO was in charge of the administrative division. In January of 2004, the three Vice-Presidents and CFO, all of whom were male, each made $87,550 a year.

---

[1]The facts set forth are either uncontroverted or if controverted, they are set forth in the light most favorable to Plaintiff.

Plaintiff Lauri Allen was hired as CFO in May of 2004. She has a B.S. in accounting and became a certified public accountant in 1992. Prior to being hired by the Garden City Co-Op, she worked for seventeen years in public accounting and had several years of supervisory experience over other accountants. Defendant John McClelland, CEO of the Garden City Co-Op, set Allen's starting salary at $75,000 a year.

Allen was offered the same starting salary as that offered to Barry Brant, whom had recently been promoted to Vice-President of crop production. Brant had been working full time for eight years, and his experience was in sales. McClelland testified that he offered Allen the same starting salary as Brant because he believed that the positions were substantially similar and that Allen and Brant were at the same position in their careers. McClelland also stated that the CFO's and crop production's divisions were smaller than the grain and petroleum divisions, and Allen and Brant had less experience as this would be their first managerial job.

Allen held the identical CFO position as her male predecessor, Vern Kinderknecht, and her male successor, Brent Merz, with the same duties and responsibilities. When Kinderknecht left employment, he was being paid $87,550 a year. Allen started at $75,000 a year in May of 2004 and received a raise in February of 2005 to $80,000. In March of 2005, she was given a cost of living raise from $80,000 to $81,600. Allen had a company car and received a $10,000 bonus.

During Allen's tenure at the Co-Op, Allen stated that when she presented ideas to the Board, they were "shot down," but the Board supported ideas that male Vice-Presidents presented. Approximately one month prior to Allen's discharge, Allen complained to McClelland that "this is a good 'ol boys' club, and you're not letting me in it." Shortly before Allen was asked to tender her resignation, Allen expressed concern to Ann Jackson, Personnel Director, that a male (Amos) hired

to replace a female (Brungardt) at one of the Co-Op's stores was hired at a higher salary. Allen placed a note on McClelland's desk that she wanted to talk to him about the Amos/Brungardt situation.

The Garden City Co-Op's policy was that the CFO could only be terminated by the Board. McClelland testified that he spoke with Board members about Allen's job performance prior to asking for an receiving Allen's resignation.  There is testimony by McClelland and one board member that Plaintiff's issues were discussed, but there are no Board meeting minutes that reference Allen's termination.  On October 11, 2005, McClelland asked Allen to resign.

At the exit interview, McClelland told Allen that she had a tendency to go from "M-Z rather than A-Z," and he did not need a CPA. McClelland testified that he asked for Allen's resignation because they were "unhappy with the mood" of the department and its adoption of the AgTrax system, "the financial statements did not come out in a timely manner," Allen's department had a lot of bickering, and there was no interaction between Allen's division and the petroleum department.

Merz was hired as CFO in October of 2005.  His starting salary was $90,000, and he received a $10,000 signing bonus.  McClelland testified that he based Merz' salary on Allen's salary because he believed that it was a fair salary and because Merz would not have a company car, he added "90 some hundred dollars, came up to an even 90,000." McClelland also stated that the $10,000 signing bonus was to compensate Merz for purchasing a vehicle. Merz testified that he did not discuss compensation for a company car before accepting the position. McClelland also testified that Merz' supervisory experience and experience working with AgTrax software was important.   In January of 2006, Merz received a raise to $91,800. In August of 2006, he received a raise to $96,800. The

Garden City Co-Op is paying for him to earn his undergraduate degree in accounting.

Allen filed suit alleging that she was discriminated against in her pay in violation of the Equal Pay Act ("EPA"), Title VII, and Kansas Act Against Discrimination ("KAAD"); she was terminated in retaliation for protected activity in violation of the EPA, Title VII, and KAAD; she was terminated because of her gender in violation of Title VII and KAAD; and she was not provided timely annual statements for her 401k or an SPD in violation of 29 U.S.C. §1024. Defendants seek summary judgment.[2]

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[3] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[4] A fact is "material" when "it is essential to the proper disposition of the claim."[5] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[6]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[7] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an

[2]The Court will refer to McClelland and the Garden City Co-Op as Defendants throughout the Order recognizing that Plaintiff's claims against Defendant McClelland are only for retaliation under the EPA.

[3]Fed. R. Civ. P. 56(c).

[4]*Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[5]*Id.*

[6]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[7]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

-4-

essential element of the nonmoving party's claim.[8]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[9]  The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10]  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[11] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[12]  The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[13]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14]

## III.  Analysis

Plaintiff alleges that she was discriminated against in her pay in violation of the EPA, Title VII, and KAAD; she was terminated in retaliation for protected activity in violation of the EPA, Title VII, and KAAD; she was terminated because of her gender in violation of Title VII and

---

[8]*Id.* (citing *Celotex*, 477 U.S. at 325.)

[9]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[10]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000)(citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[11]*Adler*, 144 F.3d at 671.

[12]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[13]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[14]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

KAAD; and she was not provided timely annual statements for her 401k or an SPD in violation of 29 U.S.C. §1024. The Court will address each contention.

### A.  Unfair Pay under the EPA[15]

Plaintiff asserts that Defendants paid her less than similarly situated males for work that was substantially equal. Defendants assert that they are entitled to summary judgment because they have advanced legitimate reasons for any alleged pay disparity.

To establish a prima facie case under the EPA, a plaintiff must demonstrate that "(1) the plaintiff was performing work which was substantially equal to that of employees of the opposite sex, taking into consideration the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; [and] (3) employees of the opposite sex were paid more under such circumstances."[16]  If the plaintiff can establish a prima facie case, the burden of persuasion then shifts to the defendant to establish that the wage disparity was justified because of "(1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; [or] (4) a disparity based on any factor other than sex."[17]  "[B]ecause the employer's burden in an EPA claim is one of ultimate persuasion, in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary."[18]

---

[15]The Court will address Plaintiff's claim of unpair pay under the EPA separately from her claim of unfair pay under Title VII and the KAAD as it involves a different analysis.

[16]*Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1311 n. 5 (10th Cir. 2006) (citation omitted).

[17]*Id.* at 1311 (citations omitted); *see also* 29 U.S.C. § 206(d)(1). Plaintiff contends that Defendants did not raise these affirmative defense in their Answer or Pretrial Order. Defendants asserted in the Pretrial Order that they had legitimate, nondiscriminatory reasons for their decision, and the Court finds that these assertions sufficiently raised an affirmative defense.

[18]*Mickelson*, 460 F.3d at 1311 (citations and quotations omitted).

There is a significant difference between the burden of proof under the EPA and under Title VII.[19]   "Under Title VII, the plaintiff always bears the burden of proving that the employer intentionally paid her less than a similarly-situated male employee.  The EPA, however, has been described as imposing a form of strict liability on employers who pay males more than females for performing the same work - in other words, the plaintiff in an EPA case need not prove that the employer acted with discriminatory intent."[20]  The employer is required "to submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity."[21]

Defendants state that they had legitimate, nondiscriminatory reasons for any alleged pay disparity as their reasons were based on responsibilities, experience, and qualifications.[22] These reasons include: (1) the same salary was offered to Plaintiff as that offered to Mr. Brant, a male hired

---

[19]*Id.* at 1310.

[20]*Id.* at 1310-11.

[21]*Id.* at 1312 (citation omitted) (emphasis in original).

[22]Defendants do not address whether plaintiff can establish a prima facie case under the EPA.  Instead, Defendants argue that they had  legitimate, nondiscriminatory reasons for any pay disparity and that Plaintiff cannot demonstrate that those reasons are pretextual.  As stated above, a pretext analysis is inapplicable in an EPA discrimination context.  *See Mickelson*, 460 F.3d at 1311.
   Because Defendants do not specifically address the elements of a prima facie case, there is no discussion as to the appropriate comparators to Plaintiff. The Court has concluded for purposes of this Order that there are three comparators which include: (1) Plaintiff's immediate predecessor, Vern Kinderknecht; (2) Plaintiff's successor, Brent Merz; and (3) Vice-President Barry Brant.  Both Plaintiff and Defendants used these three individuals when making comparisons to Plaintiff's salary.
   While Plaintiff also used several other comparators, including Vice-President Ken Jameson and Vice-President Rod Petty, there appear to be factual questions as to whether these individuals are appropriate comparators. Defendants state that the size of Vice-Presidents Jameson's and Petty's divisions were larger than Plaintiff's and Vice-President Brant's divisions which justifies any pay disparity.  As such, it appears that Plaintiff may not have been performing substantially equal work as to these individuals.  However, Defendants admit that Plaintiff's position, CFO, and the three division Vice-Presidents functioned as if they were on the same level and reported to the CEO. In January of 2004, all four vice-presidents, regardless of the size of the division, were equally paid $87,550. From the record, the Court is unable to conclude whether they are appropriate comparators.

as vice president of crop production, because both individuals had a lack of experience in their new positions; and (2) the disparity between Plaintiff's pay and Plaintiff's predecessor's and successor's pay was based on Plaintiff's inexperience.

Plaintiff asserts that there is a factual question as to whether Plaintiff and Mr. Brant were at the same position in their careers. She points to evidence that Plaintiff had been working full time for nine years longer than Mr. Brant and that Plaintiff had previously supervised individuals while Mr. Brant had not. While Defendants have stated that the disparity between Plaintiff's pay and her predecessor's and successor's pay was because of Plaintiff's lack of experience, Plaintiff points to evidence that Defendants never asked about her supervisory experience and that Defendants were unaware of whether she did or did not have supervisory experience. Plaintiff has also pointed to evidence that Defendants did not discuss Plaintiff's successor's supervisory experience before hiring him and setting his pay rate. As such, there is a factual question as to whether Plaintiff's lack of managerial experience was a factor in setting her pay for the position.

Plaintiff has also pointed to evidence that she had a degree in accounting and over seventeen years in experience in public accounting while her successor did not have college degree. Defendants are now paying for his education to obtain an accounting degree. Finally, although Defendants contend that a company car was the basis for the higher pay for Plaintiff's successor, Plaintiff has presented evidence that there was no discussion between Plaintiff's successor and Defendants as to whether his compensation would include a company car. The Court concludes that there are numerous factual questions as to the basis of Defendant's decision in setting Plaintiff's pay and cannot conclude that the proffered reasons *do in fact* explain the pay difference. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's discrimination claim under the EPA.

**B.  Discrimination in Pay under Title VII and KAAD**[23]

Under Title VII, when there is no direct evidence of discrimination, a party may carry its burden by presenting circumstantial evidence under the familiar *McDonnell Douglas* burden-shifting framework.[24]

> In the summary judgment context, a plaintiff initially must raise a genuine issue of material fact on each element of the prima facie case. If a plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision. Should the defendant articulate a nondiscriminatory reason, the burden shifts back to plaintiff to show a genuine issue of material fact as to whether defendant's reason for the discharge is pretextual.[25]

"To establish a prima facie case of wage discrimination under Title VII, plaintiff must show that she is a member of a protected class and occupied a job similar to that of higher paid employees."[26]  Defendants appear to concede that Plaintiff has established a prima facie case and argue that they have presented legitimate, nondiscriminatory reasons for the pay disparity. Under Title VII, the burden in articulating legitimate, nondiscriminatory reasons is "exceedingly light."[27] As Defendants have asserted that the disparity between Plaintiff's pay and the other male individuals' pay was based on Plaintiff's inexperience and other factors including a company car, Defendants have satisfied their burden in articulating a legitimate, nondiscriminatory reason.

---

[23]The Court will address Plaintiff's Title VII and KAAD claims together. "[F]ederal decisions applying Title VII are persuasive authority in construing KAAD claims because the statutory schemes are analogous." *Baker v. Blue Cross Blue Shield of Kan.*, 2002 WL 1627665, at *2 (D. Kan  Jul. 10, 2002).

[24]*MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).

[25]*Id.* (citations omitted).

[26]*Mehus v. Emporia State Univ.*, 222 F.R.D. 455, 481 (D. Kan. 2004) (citing *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1362-63 (10th Cir. 1997). "Plaintiff is not required to show that she was performing work substantially equal to that of high paid employees, as required for an EPA claim." *Id.* (citations omitted).

[27]*Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1165 (10th Cir. 2007).

The third step, therefore, is whether Plaintiff has presented sufficient evidence to demonstrate that Defendants' reasons are pretextual. "A plaintiff can show prextext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence."[28]   As stated above, Plaintiff has demonstrated several factual questions as to the weaknesses and inconsistency in the reasons offered for Plaintiff's pay rate. This precludes summary judgment on Plaintiff's discrimination claim with regard to her pay under Title VII and KAAD.

### C. Retaliation under the EPA, Title VII, and KAAD/Discrimination in Termination under Title VII and KAAD[29]

Retaliation claims brought under the EPA/Fair Labor Standards Act ("FLSA") are subject to the same burden-shifting analysis as claims brought under Title VII.[30]   "To establish a prima facie case of retaliation under the EPA, plaintiff must prove: (1) he or she engaged in activity protected by the FLSA; (2) he or she suffered adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action."[31]   Once a plaintiff establishes a prima facie

---

[28]*Mickelson*, 460 F.3d at 1315 (citation omitted).

[29]The Court will address Plaintiff's discriminatory discharge claim with her retaliatory discharge claim because Defendants appear to concede Plaintiff's prima facie case of discriminatory discharge.  Defendants assert that Plaintiff cannot demonstrate their legitimate, nondiscriminatory reasons for her termination are pretextual. Because Defendants assert the same legitimate reasons and the same arguments as to why Plaintiff cannot establish those reasons are pretextual, the Court will address Plaintiff's discriminatory discharge and retaliatory discharge claims together.

[30]*See Connor v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1393-94 (10th Cir. 1997); *see also Kester v. Shawnee Mission Unified Sch. Dist. No. 512*, 2005 WL 4708214, at *20-22 (D. Kan. Aug. 15, 2005).

[31]*Id.* at *21. Likewise, under Title VII, "[t]o establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected

case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its decision.[32]  The burden then shifts back to the plaintiff to demonstrate that defendant's reason is pretextual.[33]

Defendants assert that Plaintiff cannot prove a causal connection between her complaints and Defendants' decision to request her resignation.[34]  Plaintiff presented evidence that she complained to Defendant McClelland that "this is a good 'ol boys' club, and you're not letting me in it" about a month before her termination.  Plaintiff also presented evidence that the week before her termination she complained to Ann Jackson, the Human Resources director, that a male (Joe Amos) replacing a female (Jana Brungardt) was paid a higher salary.[35]  In addition, Plaintiff placed a note on McClelland's desk that she wanted to talk to him about the Amos/Brungardt situation.

---

activity and the materially adverse action.'" *Pinkerton v. Colo. Dep't of Transp.,* 563 F.3d 1052, 1064 (10th Cir. 2009) (citation omitted).

[32]*Id.*

[33]*Id.*

[34]Defendant summarily states that Plaintiff cannot prove a causal connection but provides little argument as to this issue and does not specifically address whether Plaintiff engaged in protected activity under the EPA/FLSA or Title VII.
    In addition, while Defendants assert that Plaintiff resigned, the Court is unclear whether Defendants are contending that they did not subject Plaintiff to an adverse employment action. However, it is undisputed that Plaintiff was given the option to resign or to be terminated, and a retaliation claim requires "that a  reasonable employee would have found the challenged action materially adverse." *Id.*

[35]For support of this fact, Plaintiff cites to a portion of her deposition testimony which was not provided to the Court. Ann Jackson's testimony, however, was provided, and she testified that she remembered shortly before Plaintiff being fired that Plaintiff had a conversation with Jackson about how a male managing one of the Co-Op's stores was going to paid more than the previous female manager. Jackson does not recall the amount of the pay difference.
    Defendants address a separate complaint of discrimination allegedly made by Plaintiff to Amanda Cooper about McClelland's ill-treatment that may have been because of Plaintiff's gender.  While it is unclear whether Plaintiff is relying on this as "protected activity," Defendants state that Cooper never took this complaint to McClelland.  Plaintiff has provided no evidence otherwise.  As such, it appears that Defendants were unaware of this complaint prior to Plaintiff's termination which precludes a finding that a causal connection existed with regard to this complaint.

"A causal connection may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'"[36]   "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."[37]   The Tenth Circuit has determined that a period of one and one-half months between protected activity and adverse action may, by itself, establish causation."[38]   Because of the close temporal proximity of either one month or one week between the alleged protected activity and adverse action, the Court finds that Plaintiff has established causation.

Defendants state that they asked for Plaintiff's resignation because Defendant McClelland was unhappy with the mood of Plaintiff's department and its productivity in adopting the AgTrax system, financial statements were not coming out in a timely manner, Plaintiff's department was bickering and fighting, and there was no interaction between Plaintiff's department and the petroleum department.   Defendants' burden is not onerous, and the Court finds that Defendants have offered a legitimate, nondiscriminatory reason for Plaintiff's termination.

Defendants assert that Plaintiff cannot establish pretext because Plaintiff concedes that some of the problems listed above existed.   Plaintiff, however, has presented evidence that the problems with financial statements and the lack of interaction between her department and the petroleum department had been occurring prior to her taking the CFO position and that Defendant did not

---

[36]*O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (citation omitted).

[37]*Id* (citation omitted).

[38]*Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

terminate her predecessor for those reasons.[39]  In addition, Defendants appear to concede that the financial statements are still not being prepared by Plaintiff's successor as timely as Defendants would like, but there has been continuous improvement in the preparation of the reports. Plaintiff contends that this improvement is due to Defendants allowing her successor to hire additional personnel and increased attention by the Co-Op's auditors and accountants.

In addition, Plaintiff argues that a reasonable jury could find that Defendants' reasons are pretextual because Defendants have given inconsistent reasons for Plaintiff's discharge, evidence demonstrates that other employees outside the protected class were treated differently, Defendants failed to follow a progressive discipline policy,[40] and there were procedural irregularities in Plaintiff's termination.

While Plaintiff contends that the close temporal proximity presents a jury question as to whether the reason offered is pretextual, temporal proximity alone is not enough to demonstrate pretext.[41]  Plaintiff, however, has shown that Defendants' reasons for her termination have been inconsistent over time. At Plaintiff's termination, McClelland told her that she tended to go from M-Z rather than A-Z and that he did not need a CPA.[42]  In response to interrogatories, Defendant did not list those reasons but listed other reasons for her termination, including that she continually

---

[39]The Court notes that Kinderknecht was also given the option to resign or be terminated, but this was because Kinderknecht was making demands of the Board and not because of the timeliness of financial statements or fighting between the administrative department and petroleum department.

[40]While Defendants contend that progressive discipline was not warranted because Plaintiff resigned, it is undisputed that Defendants asked for Plaintiff's resignation because of the alleged problems occurring in her department. Plaintiff was given the choice to resign or to be terminated.  Neither party addresses whether Plaintiff's problems would warrant progressive discipline prior to her resignation/termination, and the Court therefore does not find this to be a factor.

[41]*Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1172 (10th Cir. 2006).

[42]Plaintiff has presented evidence that Defendants are now paying for her successor to obtain an undergraduate accounting degree while she had an accounting degree and was a certified public accountant.

harassed her direct reports and long term employees were threatening to leave.[43]   Evidence demonstrating that an employer gives inconsistent reasons justifying its reasons for termination may be indicative of pretext.[44]

Plaintiff has also presented evidence that her termination required Board approval and that the previous termination of Plaintiff's male predecessor requiring Board approval was documented in the Board of Director minutes prior to his termination.  In Plaintiff's case, it appears that the Board voted in a special executive session to terminate Plaintiff in which the minutes were not recorded.  Viewing the evidence in the light most favorable to the Plaintiff, as the Court must at this time, the Court finds that there are enough inconsistencies and weaknesses in Defendants' explanation to preclude summary judgment on Plaintiff's retaliation claim under the EPA, Title VII, and KAAD and Plaintiff's discrimination claim regarding her termination under Title VII and KAAD.

### Punitive Damages for Retaliation under the EPA/FLSA

Defendants contend that even if the Court finds that a factual question remains as to Plaintiff's EPA claim, the Court should find that they are entitled to partial summary judgment in that punitive damages are not available to Plaintiff under the EPA, which is a part of the Fair Labor Standards Act ("FLSA").  Plaintiff contends that punitive damages are available under the retaliation provisions of the EPA because the language contained in the second sentence of 29 U.S.C. § 216(b) that states "such legal or equitable relief as may be appropriate" was meant to allow more expansive

---

[43]Several of Plaintiff's direct reports testified that they did not feel harassed by Plaintiff.

[44]*Goldstein v. Sprint United Mgmt. Co.*, 288 Fed. Appx. 476, 481 (10th Cir. 2008).

damages.[45]

Neither the Tenth Circuit nor the District of Kansas have addressed whether punitive damages are available for retaliation claims brought under the FLSA, and the circuits that have addressed the issue are divided. As this is an issue of statutory interpretation, the Court's starting point is the statute itself.

The EPA is encompassed within the FLSA, and the FLSA's enforcement provision, 29 U.S.C. § 216(b) , provides:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

In *Snapp v. Unlimited Concepts, Inc.*,[46] the Eleventh Circuit determined that punitive damages were unavailable under section 216(b) for retaliation claims brought under the FLSA. In deciding the issue, the court considered the statutory language and first relied on the principle of *ejusdem generis* which means interpreting "a general statutory term . . . in light of the specific terms that surround it."[47]  The court decided that all of the relief provided for in section 216(b) was compensatory in nature and therefore punitive damages "would be out of place in a statutory

---

[45]Plaintiff only appears to be seeking punitive damages and not compensatory damages for emotional distress.  As such, the Court's discussion is only applicable to punitive damages under the FLSA and has no bearing as to whether compensatory damages for mental or emotional distress may be available.

[46]208 F.3d 928 (11th Cir. 2000), *cert. denied*, 532 U.S. 975 (2001).

[47]*Id.* at 934 (citing *Hughey v. United States*, 495 U.S. 411, 419 (1990)).

provision aimed at making the plaintiff whole."[48]

In addition, the court considered the rest of the statutory scheme and found that Congress included punitive sanctions in section 216(a) because that provision provides that a person who willfully violates section 215 may be fined or imprisoned.[49] The court stated that "[i]t is clear that section 216(a), which provides for criminal penalties for 'willful' violations, is punitive in purpose; and section 216(b), as we have already found, is clearly compensatory."[50]

The Eleventh Circuit recognized that the language in the second sentence of section 216(b) appeared broader than the language in the first sentence, and the second sentence addressed retaliation claims under section 215(a)(3).[51] However, the court noted that it did not think Congress "meant to abandon all restraints and throw open the doors to every conceivable variety of damages in retaliation cases."[52] The court stated:

> We think, instead, that the difference in the remedial language is tied to differences in the nature of minimum wage and overtime wage cases on the one hand, and retaliation cases on the other. In minimum wage and overtime wage cases, plaintiffs are limited to recovering "their unpaid minimum wages, or their unpaid overtime compensation ... and ... an additional equal amount as liquidated damages" because those are the only damages necessary to compensate the aggrieved employee. 29 U.S.C. § 216(b). In retaliation cases, on the other hand, "employment, reinstatement, promotion, and the payment of wages lost" may not fully compensate the plaintiff. *Id.* Congress provided for, in addition, "such legal or equitable relief as may be

---

[48]*Id*.

[49]*Id*. at 934-35.  Specifically, section 216(a) states: "Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both. No person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection."

[50]*Snapp*, 208 F.3d at 935.

[51]*Id.* at 937.

[52]*Id.*

appropriate to effectuate the purposes of section 215(a)(3)" because the kinds of relief that a district court may need to award to compensate the plaintiff fully will vary with the facts of each case. Front pay is just one example, when for various reasons the court finds it undesirable to order an employee's reinstatement. That district courts may have to exercise some creativity in awarding relief in retaliation cases does not mean that Congress meant that courts can award damages that go completely outside the boundaries of section 216(b)'s compensatory purpose.[53]

Finally, the Eleventh Circuit relied on a previous decision interpreting the language of section 626(b) in the Age Discrimination in Employment Act ("ADEA").[54] The court stated that the language in section 626 of the ADEA was similar to the remedial portions of the FLSA.[55] Previously, the Fifth Circuit concluded that because section 626(b) provided for liquidated damages for willful violations of the Act but was silent as to punitive damages, "the omission of any reference thereto was intentional."[56] Although the Eleventh Circuit noted that the liquidated damages provided for in the ADEA for wilful violations appeared to be more punitive in nature, it found that the FLSA also set forth punitive sanctions, albeit in a different section of the FLSA.[57] The court reasoned that "Congress did not 'leave out' punitive sanctions in the FLSA; it merely addressed

---

[53]*Id.*

[54]*Id.* at 938 (relying on *Dean v. Am. Sec. Ins. Co.*, 559 F.2d 1036 (5th Cir. 1977)). The court noted that former Fifth Circuit cases decided before September 30, 1981 were binding precedent on the Eleventh Circuit.

[55]*Id.* (citing *Dean*, 559 F.2d at 1039). 29 U.S.C. § 626(b) provides that "[t]he provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title and subsection (c) of this section. Any act prohibited under section 623 of this title shall be deemed to be a prohibited act under section 215 of this title. Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217of this title: *Provided,* That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section."

[56]*Dean*, 559 F.2d at 1039.

[57]*Snapp*, 208 F.3d at 938-39.

them in a different manner."[58]  In finding that Congress set forth a clear scheme to remedy violations under the FLSA, the Eleventh Circuit concluded that punitive damages were not within Congress's intent under section 216(b).[59]

In contrast, the Seventh Circuit has found that punitive damages are available under section 216(b) for retaliation claims brought under the FLSA.[60]  In *Travis*, the Seventh Circuit noted that the previous remedies contained in the FLSA were "statutory wages and overtime compensation plus 'an additional equal amount as liquidated damages' plus attorney's fees."[61]  It determined that when Congress amended the FLSA in 1977, it included language authorizing "legal relief" which is "a term commonly understood to include compensatory and punitive damages" and included the language "without limitation."[62]  The court reasoned that because Congress authorized other measures of relief "without limitation," it was up to the courts to decide what remedies were available.[63] The Seventh Circuit found that the legislative history was unhelpful in determining Congressional intent, and without much analysis, it determined that "Congress could [have] limit[ed] these damages, but the 1977 amendment does away with the old limitations without establishing new ones."[64]  Accordingly, the Seventh Circuit determined that punitive damages were available under

---

[58]*Id*. at 939.

[59]*Id*.

[60]*Travis v. Gary Cmty. Mental Health Ctr. Inc.*, 921 F.2d 108 (7th Cir. 1990).

[61]*Travis*, 921 F.2d at 111 (citing 29 U.S.C. § 216(b)).

[62]*Id*.

[63]*Id*.

[64]*Id*. at 111-12.

section 216(b) for retaliation claims under the FLSA.[65]

In *Goico v. Boeing Co.,*[66] the District of Kansas addressed the Seventh Circuit's *Travis* decision and found that punitive and compensatory damages for emotional distress were not allowed under the ADEA.  Although *Goico* involved a claim of retaliatory discharge under the ADEA, the ADEA's enforcement provisions are "patterned after" the FLSA.[67]  In deciding *Goico*, Judge Brown noted that it was "not clear at all that the 1977 FLSA amendment was intended to permit recovery of consequential and punitive damages on retaliation claims" and found that "the more reasonable interpretation would appear to be that Congress understood the limited remedies available under the ADEA retaliation provision and intended to adopt the same standard for FLSA retaliation claims."[68]  Judge Brown found that "the amendment does not support the view that Congress intended to single out retaliation claims under the FLSA (or ADEA) for potentially far greater recovery than it allowed with respect to virtually all other types of employment discrimination claims."[69]  Accordingly, the District of Kansas found that punitive damages and compensatory damages for emotional distress were not available under the ADEA.[70]

---

[65]*Id.* at 112. The Seventh Circuit also found that compensatory damages for emotional distress were available.  *Id.*  The Sixth Circuit has also determined that compensatory damages for mental and emotional distress are available under section 216(b) for retaliation claims.  *Moore v. Freeman*, 355 F.3d 558, 563-64 (6th Cir. 2004). The Sixth Circuit did not address whether punitive damages were available under section 216(b) but noted the circuit split.  *Id.* at 564.  District courts have found both that punitive damages are available and unavailable under section 216(b).  *See, e.g.*, Marjorie A. Shields, Annotation, *Availability of Punitive Damages in Action for Retaliatory Discharge under § 16(b) of Fair Labor Standards Act (29 U.S.C.A. § 216(b))*, 178 A.L.R. Fed. 15 (2002).

[66]347 F. Supp. 2d 986 (D. Kan. 2004).

[67]*Id.* at 994.

[68]*Id.* at 996.

[69]*Id.* at 997.

[70]*Id.*

The Tenth Circuit has also found that punitive damages are unavailable under the ADEA.[71] In finding that punitive damages were unavailable, the Tenth Circuit noted that "the statute itself indicates that Congress did not intend to provide punitive damages under the ADEA." In ascertaining Congress's intent, the Tenth Circuit noted that "Congress did not include punitive damages among those specifically recoverable."[72] The Tenth Circuit determined that Congress knew how to provide for punitive damages because "Congress provided that in cases of willful violations of the ADEA the court would order liquidated damages. These liquidated damages serve to punish those who engage in wilful violations- the same purpose that would be served by providing punitive damages."[73] The Tenth Circuit joined the other circuits who had previously found that punitive damages were unavailable under the ADEA.[74]

This Court finds the analysis in *Snapp* persuasive, as well as the reasoning set forth in two district court cases.[75] All of the listed remedies in section 216(b) appear to be compensatory in nature indicating that the phrase "legal or equitable relief . . . . without limitation" relates to compensatory damages. "Even the liquidated damages provision is designed to compensate the

---

[71]*See Bruno v. Western Elec. Co.*, 829 F.2d 957, 966-67 (10th Cir. 1987). "The Tenth Circuit has not decided the issue of whether compensatory damages for emotional distress are available on an ADEA retaliation claim." *Lebow v. Meredith Corp.*, 484 F. Supp. 2d 1202, 1219 n. 6 (D. Kan. 2007). In *Villescas v. Abraham*, the Tenth Circuit stated that it expressed "no opinion with respect to whether compensation for emotional distress would be available in a private sector retaliation claim under 626(b)." 311 F.3d 1253, 1261 (10th Cir. 2002).

[72]*Bruno*, 829 F.2d at 967.

[73]*Id.* In a subsequent case, the Tenth Circuit again stated that "Congress knows how to single out certain conduct when it wants to (*e.g.*, the liquidated damages provision for willful discrimination contained in 626(b) of the ADEA) . . . ." *Villescas*, 311 F.3d at 1260.

[74]*Bruno*, 829 F.2d at 966-67. At that time, five circuits had determined that punitive damages were unavailable under the ADEA.

[75]*Johnston v. Davis Sec., Inc.*, 217 F. Supp. 2d 1224 (D. Utah 2002); *Lanza v. Sugarland Run Homeowners Ass'n, Inc.*, 97 F. Supp. 2d 737 (E.D. Va. 2000).

employee for damages 'too obscure and difficult of proof of estimate other than by liquidated damages.'"[76]

The Court also finds the Tenth Circuit and District of Kansas opinions regarding the unavailability of punitive damages under section 626(b) of the ADEA instructive. The Tenth Circuit determined that punitive damages were unavailable under section 626(b) despite previously finding that "the legal and equitable remedies available under the ADEA are not limited either to those specifically listed or to those available under the FLSA."[77] In making that determination, the court noted that "an award of future damages in lieu of reinstatement furthers the remedial purposes of the ADEA by assuring that the aggrieved party is returned as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct."[78]  Because the Tenth Circuit also found that punitive damages are unavailable under this provision, this seems to indicate that the Tenth Circuit believed that damages under section 626(b) of the ADEA are only compensatory in nature.  This is similar to the Eleventh Circuit's reasoning in *Snapp* that the FLSA's remedial purpose is "to put the plaintiff in the place she would have been absent the employer's misconduct."[79]

Finally, as the Eastern District of Virginia noted:

Punitive damages are not a minor or insignificant aspect of a remedial scheme; to the contrary, they are of central significance, and thus it cannot be argued that the presence or absence of punitive damages is of little consequence and its absence from a statutory remedial scheme the product of inadvertent legislative omission.

---

[76]*Lanza*, 97 F. Supp. 2d at 740 (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945)).

[77]*See EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1172 (10th Cir. 1985).

[78]*Id.* at 1173.

[79]*Snapp*, 208 F.3d at 934.

Consequently, where, as here, the statute makes no explicit mention of punitive damages and the remedial scheme makes clear that the right afforded to aggrieved employees is compensatory in nature, courts may not engraft punitive damages onto the statute.[80]

Accordingly, the Court finds that punitive damages are unavailable under section 216(b) of the FLSA, and Defendant is granted summary judgment on this issue.

### D. ERISA Claim

Defendants assert that they are entitled to summary judgment on Plaintiff's ERISA claim because the statute under which Plaintiff claims she is entitled to recover, 29 U.S.C. §1132(c)(3), is inapplicable because it applies to funding standards, and Plaintiff's allegations only concern her 401k statements.   In response, Plaintiff states that she is asserting a claim pursuant to section 1132(c)(3) or for relief pursuant to section 1132(a)(1) or section 1132(a)(3)(b).   Defendant correctly points out that Plaintiff did not allege that she was entitled to recover under section 1132(a)(1) or section 1132(a)(3)(b) in either her Complaint or Pretrial Order but instead raises it for the first time in her response to Defendant's motion for summary judgment. "[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint."[81] Accordingly, because Plaintiff has never previously asserted that she was entitled to recover under section 1132(a)(1) or section 1132(a)(3)(b),[82] the Court will only address Plaintiff's claim for relief pursuant to section 1132(c)(3).

---

[80]*Lanza,* 97 F. Supp. 2d at 742.

[81]*Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002).

[82]While Plaintiff summarily asserts that she is entitled to recover under section 1132(a)(1) or section 1132(a)(3)(b), she does not explain to the Court how these statutes are applicable to her claim.

Section 1132(c)(3) provides:

> Any employer maintaining a plan who fails to meet the notice requirement of section 1021(d) of this title with respect to any participant or beneficiary or who fails to meet the requirements of section 1021(e)(2) of this title with respect to any person or who fails to meet the requirements of section 1082(d)(12)(E) of this title with respect to any person may in the court's discretion be liable to such participant or beneficiary or to such person in the amount of up to $100 a day from the date of such failure, and the court may in its discretion order such other relief as it deems proper.

Section 1021(d) requires an employer to give notice with regard to the employer's failure to meet minimum funding standards while section 1021(e)(2) requires the employer to provide notice of the transfer of excess pension assets to health benefits accounts.[83] Plaintiff's allegations and the facts set forth in response to Defendant's motion for summary judgment do not relate to either of these provisions as Plaintiff appears to allege that she was not provided a summary of her annual report or 401k.  Plaintiff has provided the Court with no evidence as to why she is entitled to recover under section 1132(c)(3). Because the facts do not support Plaintiff's contention that she is entitled to recover statutory damages, Defendant is entitled to summary judgment on Plaintiff's ERISA claim.

**IT IS ACCORDINGLY ORDERED** this 27th day of August, 2009 that Defendants' Motion for Summary Judgment (Doc. 85) is granted with respect to Plaintiff's claim for punitive damages under section 216(b) of the FLSA and Plaintiff's ERISA claim.

---

[83]Section 1082(d)(12)(E) is no longer in existence.

-23-

**IT IS FURTHER ORDERED** that Defendants Motion for Summary Judgment as to Plaintiff's remaining claims (Doc. 85) is denied.

**IT IS SO ORDERED**.


/s Eric F. Melgren
 ERIC F. MELGREN
 UNITED STATES DISTRICT JUDGE